**PENNSYLVANIA STATE TROOPERS ASSOCIATION, Petitioner**

v.

**Mark SCOLFORO, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 14, 2011.

Decided April 11, 2011.

we need not address DOC's remaining issue on appeal, which challenges the merits of Open Records' final determination.

Richardson Todd Eagen, Harrisburg, for petitioner.

Gayle C. Sproul, Philadelphia, for respondent.

Lucinda C. Glinn, Harrisburg, for amicus curiae the Office of Open Records.

BEFORE: LEADBETTER, President Judge, and McCULLOUGH, Judge, and BUTLER, Judge.

OPINION BY Judge BUTLER.

The Pennsylvania State Troopers Association (PSTA) petitions this Court for review of the July 14, 2010 final determination of the Pennsylvania Office of Open Records (OOR) granting in part the appeal of Mark Scolforo (Scolforo) pursuant to the Right–to–Know Law (RTKL),[1] thereby requiring the Pennsylvania State Police (PSP) to disclose supplementary employment requests of current PSP employees made since January 1, 2005, and any responses, decisions and records related to them. The issues before this Court are: (1) whether the OOR erred by concluding that the records requested were not exempt from disclosure under Section 708(b)(1)(ii) of the RTKL, 65 P.S. § 67.708(b)(1)(ii) (related to risk of physical harm), and (2) whether the OOR erred by concluding that the records requested were not exempt from disclosure under Section 708(b)(6) of the RTKL, 65 P.S. § 67.708(b)(6) (related to personal identifiers). For the reasons that follow, we affirm the final determination of the OOR.

On April 16, 2010, Scolforo, a reporter for The Associated Press in Harrisburg, submitted an RTKL request to the PSP for:

1. Requests made by current [PSP] employees to the department seeking permission to engage in outside employment since Jan. 1, 2005.

2. The response by agency officials to those requests since Jan. 1, 2005.

3. Any policies, procedures, guidelines or other departmental records that outline the conditions under which such outside work is currently allowed.

4. Any records the department has produced that describe the types of outside work that employees have engaged in, and any departmental correspondence that relates to having employees engage in outside work, any studies of outside work by employees or similar documents.

5. Records of any agency final action regarding outside work that resulted in demotion or discharge.

Reproduced Record (R.R.) at 4a, 8a.

---

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

By letter mailed May 26, 2010,[2] the PSP enclosed its policies, procedures and guidelines, and notified Scolforo that it does not have any studies or records of final actions that resulted in demotion or discharge due to supplementary employment. The PSP's response denied the remainder of Scolforo's request on the basis that the records were exempt from disclosure pursuant to RTKL Sections 708(b)(10)(i)(A) (relating to internal, pre-decisional deliberations) and 708(b)(17) (relating to noncriminal investigations).[3] In support of this assertion, the PSP attached the affidavit of Brooke L. Meade, the PSP Human Resource Analyst who, since December of 2004, has had primary responsibility for overseeing the PSP's supplementary employment approval process, which is outlined in PSP Administrative Regulation (AR) 4–17 and Management Directive 515.18. In the alternative, the PSP's May 26, 2010 response took the position that the physical harm and personal identifier exemptions require redaction of employee home addresses, the location of the employment, the usual work start and end times (for supplemental and Commonwealth employment), and all other personal security or identifying information.[4] Finally, the PSP stated that any records related to "covert law enforcement investigations" are exempt under the RTKL and the Criminal History Record Information Act, 18 Pa.C.S. §§ 9101–9183. R.R. at 6a.

Scolforo timely appealed the PSP's denial to the OOR. The PSTA, which represents current and former PSP troopers, requested to intervene in Scolforo's appeal on behalf of its members pursuant to Section 1101(c) of the RTKL, 65 P.S. § 67.1101(c). The OOR granted the PSTA's request to intervene and, on July 14, 2010, the OOR issued its final determination.[5] In granting Scolforo's appeal in part, the OOR concluded that the PSP cannot shield the supplementary employment records under section 708(b)(10) (relating to internal, predecisional deliberations) because the PSP failed to prove the elements to substantiate application of that exception. The OOR also concluded that the PSP cannot shield the supplementary employment records under Section 708(b)(17) (relating to investigative records) of the RTKL since submission of a request to engage in supplemental employment triggers only routine reviews, rather than investigations. The OOR finally concluded that the PSP failed to establish that the requested records cannot be redacted,

---

2. The PSP's response was timely mailed after the PSP notified Scolforo by letter dated April 22, 2010, that it needed an additional 30 days to respond to the request.

3. 65 P.S. §§ 67.708(b)(10)(i)(A), (b)(17).

4. According to the PSP, the following need not be redacted:

   1) The employee name;
   2) The employee's work position or title (unless redaction is necessary for security reasons);
   3) The employee's work address/work site (unless redaction is necessary for security reasons);
   4) The employee's job description (unless redaction is necessary for security reasons);

   5) Date of request;
   6) Start and end date (if any) for the supplemental employment;
   7) The name of the supplemental employer (unless redaction is necessary for security reasons; the work address, type [of] work, hours or salary would not be provided);
   8) Agency approval or disapproval (with the date, name and signature, although signatures may be redacted if there are security concerns);
   9) Stipulations as to the supplemental employment; and
   10) Any rescissions, terminations, etc. of the agency approval or disapproval.
   R.R. at 6a.

5. No party requested a hearing before the OOR.

and pointed out that not all of the records requested relate to law enforcement personnel. The PSTA appealed the OOR's determination to this Court.[6] The PSP did not appeal.[7]

Section 301(a) of the RTKL, 65 P.S. § 67.301(a), requires that Commonwealth agencies, such as the PSP, disclose public records. A "public record" is defined in the RTKL as "[a] record, including a financial record, of a Commonwealth or local agency that: (1) is not exempt under section 708; (2) is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree; or (3) is not protected by a privilege." 65 P.S. § 67.102 (footnote omitted). A "record" is defined in Section 102 as:

> Information, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency. The term includes a document, paper, letter, map, book, tape, photograph, film or sound recording, information stored or maintained electronically and a data-processed or image-processed document.

According to Section 305(a) of the RTKL, 65 P.S. § 67.305(a), there is a presumption that a record in the possession of a Commonwealth agency is a public record. Section 708(a)(1) of the RTKL, 65 P.S. § 67.708(a)(1), places the burden on the Commonwealth agency to prove by a preponderance of the evidence that a particular record is exempt under Section 708 of the RTKL and, therefore, is not a public record subject to disclosure. Finally, Section 706 of the RTKL, 65 P.S. § 67.706, mandates that, rather than denying access to a public record that contains some information not subject to disclosure, the Commonwealth agency must produce the discloseable portion, but with the exempt information redacted.

■ At issue here is Scolforo's request for records related to supplementary employment requests made by PSP employees since January 1, 2005. According to Appendage A for AR 4–17 (7/23/97) supplied with this record,[8] the PSP's instructions for completing the Commonwealth's Supplementary Employment Request, Form STD–355, requires the requesting employee to supply for the PSP's consideration: the employee's name, social security number, mailing address, payroll title, PSP agency/bureau, work site, job duties, and days and hours worked. Form STD–355 also seeks the name and address of the supplementary employer, a description of its business, title and duties of the position applied for, the dates upon which the employee applied and expects to commence work, and the days and hours to be

---

6. The "[l]aw commands that the usual deferential standard of review on appeal from Commonwealth agencies, such as the OOR, does not apply." *Bowling v. Office of Open Records*, 990 A.2d 813, 819 (Pa.Cmwlth.2010), *appeal granted by* —— Pa. ——, 15 A.3d 427 (2011). Accordingly, this Court, "in its appellate jurisdiction, independently reviews the OOR's orders and may substitute its own findings of fact for that of the agency." 990 A.2d at 818. "The scope of review for a question of law under the [RTKL] is plenary." *Stein v. Plymouth Twp.*, 994 A.2d 1179, 1181 n. 4 (Pa.Cmwlth.2010).

7. Because the PSP did not appeal, the OOR's determination as it relates to the supplementary employment requests of its civilian (nontrooper) employees is not before us. Thus, this opinion is limited to the OOR's determination only as it relates to the PSP's troopers.

8. The PSTA did not supply a copy of Form STD–355 with this record. It produced only preparation instructions effective July 23, 1997 for the 1984 version of the Form STD–355.

worked. The OOR directed the PSP to supply these and any supporting documents to Scolforo, with the exception of correspondence and internal memoranda of supervisors, and mandated that the social security numbers of the PSP employees, and the home addresses of the law enforcement officers, be redacted.

There is no dispute that the documents Scolforo requested are records in the possession of the PSP and, to the extent they are not exempt from disclosure under Section 708 of the RTKL, they are public records to which Mr. Scolforo is entitled access. The PSTA argues, however, that the records should not be disclosed pursuant to Sections 708(b)(1)(ii) and 708(b)(6) of the RTKL.[9] We disagree.

■ This Court stated in *Bowling v. Office of Open Records*, 990 A.2d 813, 824 (Pa.Cmwlth.2010)[10] that, "[a]s the [RTKL] is remedial legislation designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions, the exemptions from disclosure must be narrowly construed." Section 708(b) of the RTKL states in pertinent part:

Except as provided in subsections (c) [related to financial records] and (d) [related to aggregated data], the following are exempt from access by a requester under this act:

(1) A record, the disclosure of which:

. . . .

(ii) would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual.

The burden in this case fell on the PSP to prove by a preponderance of the evidence that the records sought are exempt under Section 708 of the RTKL. "A preponderance of the evidence is such proof as leads the fact-finder ... to find that the existence of a contested fact is more probable than its nonexistence." *Dep't of Transp. v. Agric. Lands Condemnation Approval Bd.*, 5 A.3d 821, 827 (Pa.Cmwlth.2010) (quotation marks omitted).

In support of its position that the information sought by Scolforo is exempt from disclosure under Section 708, the PSP submitted the affidavit of PSP Captain and Operational Division Director, Janet A. McNeal. Captain McNeal attested that "[w]hile engaged in supplementary employment, troopers may be prohibited by their employer from carrying their [PSP] issued weapons, leaving them unarmed, unshielded, and vulnerable." R.R. at 19a. In addition, "advanced knowledge of the work location and schedule of an off-duty trooper would be reasonably likely to result in a substantial and demonstrable risk of physical harm or to the personal security of an individual [t]rooper and or his or her co-workers." R.R. at 19a. She stated that even "seemingly innocuous information pertaining to supplemental employment," such as knowledge of "pre-established supplementary employ-

---

**9.** Scolforo argues that the PSTA has waived any challenge to the release of documents other than the actual supplementary employment request forms, since its brief refers only to those forms. Scolforo's argument is without merit. Since the PSTA's brief specifically points out that the supplementary employment request form "is the main document which is responsive to the RTKL request at issue," and consistently references "the records at issue" and "the information request-

ed," which consisted of the request forms *and* records related thereto, the occasional reference in the PSTA's brief only to the supplementary employment request forms does not limit our review to those forms exclusively. PSTA Br. at 4, 9, 11–13.

**10.** *Appeal granted by* —— Pa. ——, 15 A.3d 427 (2011).

ment schedules ... can be used to identify periods of time when troopers are engaged in supplementary employment, leaving families and property exposed to harm." R.R. at 20a. Captain McNeal's affidavit described three cases, the first in which a local enforcement officer was shot while sitting in his car awaiting back-up, a second in which four local officers in Washington were killed while preparing for their shift, and a third in which three Pittsburgh police officers were killed while responding to a domestic dispute.

In support of its position, the PSTA submitted the affidavit of its President, Bruce A. Edwards, who has been a member of the PSP for 25 years. Sergeant Edwards attested that, due to the volatile nature of the work troopers do, and their contact with members of the public who are angry, resentful, and are willing to threaten and commit violence against them, the troopers are issued firearms and bullet-resistant body armor, and they must maintain a heightened state of vigilance. He stated that "a substantial portion" of the PSTA's membership engages in supplementary employment and, while engaged in supplementary employment, troopers are often without firearms or body armor, and "do not hold the same level of vigilance to their safety and security." R.R. at 26a–27a. Sergeant Edwards stated that disclosure of a supplementary employer's name, location, days worked, and the start and end times of the hours worked "acts as a road map" that reveals where and when off-duty troopers are "most vulnerable to attack," which increases the danger to them, their civilian co-workers and family members. R.R. at 27a. It is for this reason that even the PSP irregularly schedules its undercover officers to protect their identities and work habits. Attached to Sergeant Edwards' affidavit were news articles describing the beating of an off-duty local police officer in

Pennsylvania, the killing of the four officers in Washington state, and a Maryland state police officer killed while leaving his off-duty job as a security guard.

In its brief, the PSTA argues in a footnote that redacting the locations and duties of only those troopers engaged in undercover or covert activities would serve to easily identify those individuals. While we agree that could be the case, Scolforo has conceded that "the PSP could redact the names and schedules of 'troopers currently involved in undercover work,'" and merely supply "'general information' about the number of undercover officers involved in supplementary employment." Scolforo Br. at 6; R.R. at 24a. Even without Scolforo's concession, however, the PSTA and PSP failed to produce any evidence that the job duties portion of the supplementary employment form would explicitly reflect that he or she works in an undercover or covert capacity, or that connecting such description to the trooper's real name would jeopardize his or her safety.

■ While we appreciate the potential danger PSP troopers may face on and off-duty, the evidence submitted in this case does not establish that disclosure of the supplementary employment forms and supporting documents requested by Scolforo, when appropriately redacted, make it more likely than not that PSP employees are at a risk of substantial and demonstrable risk of physical harm or to their personal security. Despite their many years of experience with the PSP, the specific examples of harm related by Captain McNeal and Sergeant Edwards, while compelling, did not include a single incident of a PSP trooper who was harmed, physically or otherwise, as a result of disclosure of his/her supplementary employment information. In *Lutz v. City of Phil-*

*adelphia,* 6 A.3d 669, 676 (Pa.Cmwlth. 2010), this Court similarly found that general testimony that police officers are frequently threatened was insufficient to establish a "substantial and demonstrable risk of physical harm" such that access to arbitration awards should be denied under Section 708(b)(1)(ii) of the RTKL. Moreover, the redaction of the troopers' home addresses from the requested documents will go a long way toward quelling concerns expressed about troopers' families and property being exposed to harm. Accordingly, we hold that the OOR did not err by concluding that the records requested were not exempt from disclosure under Section 708(b)(1)(ii) of the RTKL. In light of the potential, and substantial, danger PSP troopers may face, however, we hold that appropriate redaction of the supplementary employment forms and supporting documents requested necessarily includes redaction of location and scheduling information such that the specific time and place of an individual's off-duty employment is not disclosed.[11] The OOR's order shall be modified accordingly.

■ The PSTA also argues on appeal that personal identifiers permeate Form STD–355 because they detail the employment relationships between its members and private, non-governmental employers, and "the number of hours a member must work as a private employee to make ends meet." PSTA Br. at 12. As a result, the PSTA argues, the documents cannot be redacted, so they are exempt from disclosure under Section 708(b)(6) of the RTKL.

Section 708(b) states in pertinent part:

Except as provided in subsections (c) [related to financial records] and (d) [related to aggregated data], the following

are exempt from access by a requester under this act:

. . . .

(6)(i) The following personal identification information:

(A) A record containing all or part of a person's Social Security number, driver's license number, personal financial information, home, cellular or personal telephone numbers, personal e-mail addresses, employee number or other confidential personal identification number.

(B) A spouse's name, marital status or beneficiary or dependent information.

(C) The home address of a law enforcement officer or judge.

(ii) Nothing in this paragraph shall preclude the release of the name, position, salary, actual compensation or other payments or expenses, employment contract, employment-related contract or agreement and length of service of a public official or an agency employee.

(iii) An agency may redact the name or other identifying information relating to an individual performing an undercover or covert law enforcement activity from a record.

Although documents containing any of this information are generally exempt under Section 708, Section 506(c) of the RTKL, 65 P.S. § 67.506(c), authorizes an agency, in its discretion, to make accessible, by the process of redaction, an otherwise exempt record if:

(1) Disclosure of the record is not prohibited under any of the following:

(i) Federal or State law or regulation.

(ii) Judicial order or decree.

(2) The record is not protected by a privilege.

---

11. We note that redaction of location information for supplemental employment necessarily encompasses the name of the trooper's supplemental employer to whatever extent that the employer's name is indicative of a specific location.

(3) The agency head determines that the public interest favoring access outweighs any individual, agency or public interest that may favor restriction of access.

The agency is not, however, required to redact the record under such circumstances. *Pennsylvania State Police v. Office of Open Records*, 5 A.3d 473 (Pa. Cmwlth.2010).

Here, although the Form STD–355 and the supporting documents may reflect troopers' social security numbers and home addresses, the OOR directed the PSP to supply them to Scolforo with the social security numbers and home addresses of the troopers redacted. Thus, while the records may have contained personal identification information, without the social security number and home addresses, that is no longer the case. Form STD–355 does not otherwise require a driver's license number; home, personal or cellular telephone numbers; personal email addresses; employee or confidential personal identification numbers; [12] or spouse or dependent information. Neither does Form STD–355, either on its face or by implication, seek disclosure of a trooper's personal financial information, which is defined in Section 102 of the RTKL as "[a]n individual's personal credit, charge or debit card information; bank account information; bank, credit or financial statements; account or PIN numbers and other information relating to an individual's personal finances." Simply reflecting what hours a PSP trooper works in a supplementary capacity does not itself imply that the trooper requires them in order to make ends meet, or in any way address a trooper's personal finances. Troopers may have a myriad of reasons for working in a supplementary capacity. Moreover, despite the fact that subsection 708(b)(6)(iii) is the only subsection thereunder to specifically authorize redaction, Section 506(c) of the RTKL authorizes additional redactions at the PSP's discretion.

Since, in light of the OOR's mandated redactions, the PSP failed in this instance to prove it is more likely than not that the information sought by Scolforo would disclose personal identification information, specifically information about a trooper's personal finances, we hold that the OOR did not err by making them accessible to Scolforo.

■ Lastly, Scolforo argues that the PSTA's legal challenge was frivolous, offering nothing more than supposition of harm in an effort to withhold public records and frustrate the public's ability to monitor the PSP's activities. As a result, Scolforo demands court costs and attorney fees pursuant to Section 1304(b) of the RTKL, 65 P.S. § 67.1304(b). We disagree. Section 1304(b) indeed authorizes this Court to award these penalties if it finds that the legal challenge was frivolous. However, an *RTKL challenge is frivolous* under Section 1304(b) if it is arbitrary, vexatious or the result of bad faith. *Hearst Television, Inc. v. Norris*, 8 A.3d 420 (Pa.Cmwlth.2010). In this case, the PSTA sought interpretation of a statute out of its legitimate concern for the safety of its members. Because there is no evidence in this record that the PSTA's challenge to the OOR's determination was arbitrary, vexatious or done in bad faith, Scolforo's request for attorney's fees and costs is denied.

12. We note that while the Commonwealth's Form STD–355 Supplementary Employment Request (Rev.2–02), effective for all Commonwealth employees for the time period covering Scolforo's request, does seek employee numbers, the Form STD–355 preparation instructions supplied by the PSTA, does not specifically reference employee numbers.

Based upon the foregoing, we affirm the final determination of the OOR, with the modification that permitted redaction of the supplementary employment forms and supporting documents requested shall include redaction of location and scheduling information.

## ORDER

AND NOW, this 11th day of April, 2011, the July 14, 2010 final determination of the Pennsylvania Office of Open Records granting in part the appeal of Mark Scolforo pursuant to the Right–to–Know Law, thereby requiring the Pennsylvania State Police (PSP) to disclose supplementary employment requests of current PSP employees made since January 1, 2005, and any responses, decisions and records related to them, is affirmed. The determination is specifically modified, however, such that the redaction permitted by the Office of Open Records of the supplementary employment forms and supporting documents requested shall include redaction of location and scheduling information.

## CONCURRING OPINION BY Judge McCULLOUGH.

I concur with the Majority's holding that the July 14, 2010, order of the Office of Open Records (OOR) should be affirmed with modifications, but I diverge from the Majority's analysis of section 708(b)(1)(ii) of the Right to Know Law (RTKL).[1]

The record reflects that a reporter for the Associated Press sent a request to the Pennsylvania State Police (PSP) for records involving state troopers who accept supplementary employment outside of the agency. PSP's supplementary employment records contained the following sensitive information about the trooper and his or her supplemental work: (1) name and social security number; (2) home mailing address; (3) PSP job duties and work locations; (4) PSP work schedule; (5) name and address of the supplemental employer; and (6) days and hours worked for the supplemental employer, including approximate start and end times. (Reproduced Record (R.R.) at 26a–27a, 29a–30a.) OOR concluded that the employment records were not exempt from disclosure under section 708(b) of the RTKL; however, OOR authorized PSP to redact the troopers' home addresses and social security numbers from the records.

The Majority recognizes that troopers may face "potential, and substantial, danger" in their occupations, (Majority Opinion at 10), yet concludes the records requested were not exempt from disclosure under section 708(b)(1)(ii) of the RTKL. The Majority reasons that the evidence submitted in this case did not establish that disclosure of the supplementary employment information would more likely than not result in a substantial and demonstrable risk of physical harm to the troopers or to their personal security. I disagree.

The RTKL does not require proof that disclosure of a record will result in physical harm to an individual. Rather, section

---

1. In relevant part, section 708(b)(1)(ii) of the RTKL provides as follows

(b) **Exceptions.**—... [T]he following are *exempt* from access by a requester under this act:

(1) A record, the disclosure of which:

. . . .

(ii) *would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual.*

65 P.S. § 67.708(b)(1)(ii) (emphasis added).

708(b) of the RTKL only requires evidence showing that disclosure is *reasonably likely* to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual. The evidence here meets that standard.

Bruce Edwards, a state trooper with twenty-five years of experience, stated in his affidavit, (R.R. at 25a–28a), that state troopers are required to provide PSP with specific information regarding their supplemental employment, including their names, home address, official work duties and schedules, the name and address of the supplemental employer, and the times when the trooper is engaged in supplemental employment. Edwards noted that state police officers frequently perform supplemental employment without weapons and body armor. Edwards opined that disclosure of the record request would make it possible for a wrongdoer to identify a specific state trooper and then precisely determine the trooper's location during off-duty hours, when the trooper and his or her family are most vulnerable. He observed that this information would operate like a "road map" to find an off-duty trooper and would exponentially increase the risk of harm to the trooper and his or her family members. Edwards also stated that state police officers and their families are subjected to threats of physical harm.

Edwards' averments are corroborated by the affidavit of Captain Janet A. McNeal, who stated the following:

6. … While engaged in supplementary employment, troopers may be prohibited by their employer from carrying their Department issued weapons, leaving them unarmed, unshielded, and vulnerable.

7. Under these circumstances, advance knowledge of the work location and schedule of any off-duty trooper would be reasonably likely to result in a substantial and demonstrable risk of physical harm to the personal security of an individual Trooper. . . .

a. This is especially the case where a trooper engages in supplementary employment from his home; revealing this fact alone calls into question the safety of the vulnerable off-duty trooper as well as his family.

b. Moreover in instances were troopers have preestablished supplementary employment schedules, such schedules can be used to identify periods of time when troopers are engaged in supplementary employment, leaving families and property exposed to harm.

8. … In this case, seemingly innocuous information pertaining to supplemental employment can be used to locate and target a trooper while off-duty as well as to determine the times a trooper's family or property will be unattended and vulnerable.

(R.R. at 19a–20a.)

Edwards' and McNeal's affidavits are more specific than the testimony in *Lutz v. City of Philadelphia*, 6 A.3d 669 (Pa. Cmwlth.2010), where we concluded that evidence showing general safety and privacy concerns stemming from the release of information contained in police arbitration decisions was insufficient to establish an exemption under 708(b)(1)(ii) of the RTKL. Therefore, I would conclude that PSP's supplemental employment records are exempt from disclosure under section 708(b)(1)(ii) of the RTKL.

Even though I believe that these records are exempt, I recognize that section 506(c) of the RTKL, 65 P.S. § 67.506(c), grants an agency the discretion to make any otherwise exempt record accessible and that section 706 of the RTKL authorizes an agency to redact information from a public record that is not subject to ac-

cess. 65 P.S. § 67.706. Therefore, the Majority properly modifies OOR's decision to permit the redaction of location and scheduling information from PSP documents.[2]

---

**2.** I agree with the Majority that the redaction of location information necessarily includes redaction of the name of the supplemental employer, which is a key element of the "road map" that makes it possible to determine the whereabouts of an off-duty trooper. The record reflects that PSP indicated that they would redact the name of the supplemental employer if necessary for security reasons, (R.R. at 6a), and the record demonstrates that such security reasons exist.