# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Commonwealth of Pennsylvania, | : |
| Department of Transportation, | : |
| Petitioner | : |
| | : |
| v. | : No. 246 C.D. 2016 |
| | : Argued: September 15, 2016 |
| Walsh/Granite JV, | : |
| Respondent | : |

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE JOSEPH M. COSGROVE, Judge
                  HONORABLE DAN PELLEGRINI, Senior Judge

OPINION BY
SENIOR JUDGE PELLEGRINI          FILED: October 31, 2016

The Commonwealth of Pennsylvania, Department of Transportation (PennDOT) petitions for review of a Final Determination of the Office of Open Records (OOR) granting in part and denying in part Walsh/Granite JV's (Requestor) request seeking copies of all bids submitted to PennDOT to repair or maintain structurally deficient bridges in Pennsylvania pursuant to the Right-to-Know Law (RTKL).[1]

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

**I.**

**A.**

Under the RTKL, information is only subject to disclosure if it is a "public record." Excluded from the RTKL definition of "public record" is information exempted from disclosure by any other law. *See* 65 P.S. § 67.102; *see also* 65 P.S. § 67.305. While normally after the conclusion of the bidding process all proposals and bids are potential public records under the RTKL,[2] the issue in this case is whether Section 9111 of the Public-Private Transportation Partnership Law (P3 Law),[3] 74 Pa.C.S. § 9111, exempts unsuccessful proposals from disclosure because it only specifically provides for the disclosure of the successful

---

[2] Section 708(b)(26) of the RTKL provides an exemption to the disclosure of certain proposals and bids pertaining to the bidding process:

> (b) Exceptions.-- Except as provided in subsections (c) and (d), the following are exempt from access by a requester under this act:
>
> ***
>
> (26) A proposal pertaining to agency procurement or disposal of supplies, services or construction prior to the award of the contract or prior to the opening and rejection of all bids; financial information of a bidder or offeror requested in an invitation for bid or request for proposals to demonstrate the bidder's or offeror's economic capability; or the identity of members, notes and other records of agency proposal evaluation committees established under 62 Pa.C.S. § 513 (relating to competitive sealed proposals).

65 P.S. § 67.708(b)(26).

[3] Public-Private Transportation Partnership Law (P3 Law), 74 Pa.C.S. §§ 9101-9124.

proposal and then lists exemptions. Specifically, Section 9111 of the P3 Law provides:

(1) **Upon the selection of a development entity to be a party to a Public-Private transportation partnership agreement, the identity of the development entity selected, the contents of the response of the development entity to the request for proposals, the final proposal submitted by the development entity and the form of the Public-Private transportation partnership agreement shall be made public.** Any financial information of a development entity that was requested in the request for proposals or during discussions and negotiations to demonstrate the economic capability of a development entity to fully perform the requirements of the Public-Private transportation partnership agreement shall not be subject to public inspection.

(2) **A proprietary public and a private development entity may agree, in their discretion, to make public any information described under paragraph (1) that would not otherwise be subject to public inspection.**

(3) If a proprietary public entity terminates a Public-Private transportation partnership agreement for default, rejects a private entity on the grounds that the private entity is not responsible or suspends or debars a development entity, the private entity or development entity, as appropriate, shall, upon written request, be provided with a copy of the information contained in the file of the private entity or development entity maintained by the proprietary public entity under a contractor responsibility program.

(4) The following information **shall not be public**:

(i) **Information relating to proprietary information, trade secrets, patents or exclusive licenses, architectural and engineering plans and**

3

**information relating to competitive marketing materials and strategies.**

(ii) Security information, including risk prevention plans, detection and countermeasures, emergency management plans, security and surveillance plans, equipment and usage protocols and countermeasures.

(iii) Records considered nonpublic matters or information by the Securities and Exchange Commission under 17 CFR 200.80 (relating to commission records and information).

(iv) Any financial information deemed confidential by the proprietary public entity upon a showing of good cause by the offeror or development entity.

(v) Records prepared or utilized to evaluate a proposal.

74 Pa.C.S. § 9111 (emphases added).

## B.

Requestor is a member of the construction joint venture of Plenary Walsh Keystone Partners, LLC which, in January 2015, submitted the successful proposal for the Pennsylvania Rapid Bridge Replacement Project (Bridge Replacement) to replace 558 structurally deficient bridges and maintain those bridges for 25 years under the P3 Law. In October 2015, Requestor submitted a RTKL request to PennDOT, seeking the following:

> [Requestor] hereby requests the Proposals, which consist of both the Technical Proposal and Financial Proposal, of any firm, team or companies that submitted Proposals to [PennDOT] for the Pennsylvania Rapid Bridge Replacement Project, [request for proposals] [(]RFP[)]

4

Solicitation #: 3513R16, however, excluding the Proposal from Plenary Walsh Keystone Partners, LLC., to which [Requestor] is a team member of. Specifically, the firms, teams, or companies [Requestor] seeks the Proposals of include, but are not limited to, the following:

1. Keystone Bridge Partners

2. Commonwealth Bridge Partners

3. Pennsylvania Crossings.

(Reproduced Record (R.R.) at 11a.)

PennDOT denied the request, contending that the RTKL does not apply to unsuccessful proposals because Section 9111(1) of the P3 Law, 74 Pa.C.S. § 9111(1), limits potential public access to only the successful development entity's proposal, in this case, Requestor's consortium. Additionally, it stated that certain portions of the information contained in the proposals were also exempt under exception provisions of the RTKL because they contained personal identification information, trade secrets or confidential proprietary information, financial information, and records of the agency evaluation of proposals.[4] Requestor appealed that determination to the OOR.

---

[4] Sections 708(b)(6), 708(b)(11), 708(c) and 708(b)(26) of the RTKL, 65 P.S. §§ 67.708(b)(6), 67.708(b)(11), 67.708(c) and 67.708(b)(26), exclude from disclosure personal identification information, trade secrets or confidential proprietary information, and financial information and records, respectively.

5

**II.**

Although Section 9111(1) of the P3 Law, 74 Pa.C.S. § 9111(1), specifically provides that only the successful proposal is subject to release, Requestor, before the OOR, contended that the P3 Law's silence as to disclosure or non-disclosure of unsuccessful bidders' proposals means that unsuccessful proposals are not exempt from disclosure and must be disclosed to the same extent as that of a successful proposal.

In response, PennDOT submitted an affidavit of Michael R. Bonini, Director of PennDOT's Public Private Partnership Office, in which Mr. Bonini maintained that it is his understanding that all of the proposals were covered by Section 9111 of the P3 Law, 74 Pa.C.S. § 9111(1), and that the parties submitting the proposals "expressly agreed during the RFP process that Section 9111(1) was controlling and unsuccessful proposals were not subject to public access." (R.R. at 31a, ¶9.) He went on to state that the proposals are:

> [V]oluminous and include information relating to proprietary information, trade secrets, patents or exclusive licenses, architectural and engineering plans and information relating to competitive marketing materials and strategies; Security [sic] information, including risk prevention plans, detection and countermeasures, emergency management plans, security and surveillance plans, equipment and usage protocols and countermeasures; records that entities might consider nonpublic matters or information by the Securities and Exchange Commission under 17 CFR 200.80 (relating to commission records and information; and financial information deemed confidential by the proprietary public entity upon a showing of good cause by the offeror or development entity).

6

(*Id.* at ¶10.) He added that even if the RTKL applies, the unsuccessful proposals contain the following information:

> a. Trade secrets and confidential information that was submitted pursuant to the RFP's terms regarding public access, including information regarding public access, including information about delivering the [Bridge Replacement] project, obtaining financing and development and implementation of a maintenance plan for a period of 25 years.
>
> b. Financial information, including without limitation information submitted to demonstrate proposers' financial capacity and financing technology.
>
> c. Contact information, including personal telephone numbers.
>
> d. Information requiring redaction, which necessarily would mean that copy costs would be incurred by [PennDOT].

(*Id.* at 32a, ¶12.)

Rejecting PennDOT's position that Section 9111(1) of the P3 Law, 74 Pa.C.S. § 9111(1), only requires the successful bidders' records to be disclosed, the OOR held that it was the General Assembly's intention in enacting the RTKL to make the proposals of unsuccessful bidders generally subject to public disclosure, and that if the legislature wanted to categorically exclude unsuccessful proposals, it would have used language in the P3 Law that explicitly said so. Applying the RTKL exceptions rather than those contained in the P3 Law, the OOR found that unsuccessful bidders' personal telephone numbers and financial information

7

submitted to demonstrate a bidder's capacity to perform are facially exempt from disclosure under RTKL Sections 708(b)(6) and (b)(11), 65 P.S. §§ 67.708(b)(6) and (b)(11), respectively, and may be withheld, and unsuccessful bidder's confidential proprietary information/trade secrets are exempt from disclosure under Section 9111(4) of the P3 Law, 74 Pa.C.S. § 9111(4). PennDOT appealed.

## III.

In this appeal,[5] PennDOT contends that the OOR's decision violates Section 306 of the RTKL, which states that "[n]othing in this act shall supersede or modify the public or nonpublic nature of a record or document established in Federal or State law, regulation or judicial order or decree." 65 P.S. § 67.306. Citing to *Department of Labor and Industry v. Heltzel*, 90 A.3d 823, 833 (Pa. Cmwlth. 2014), PennDOT argues that "[o]ther statutes that provide other avenues, and set other parameters for access to records … operate independently of the RTKL. Pursuant to Section 3101.1 of the RTKL, [65 P.S. § 67.3101.1,] their procedural hurdles, and exceptions, remain intact and enforceable." PennDOT claims that the P3 Law expressly provides that only portions of successful proposals are subject to access and does not make unsuccessful proposals public. It claims that because the P3 Law establishes parameters for access to successful proposals, it is in clear conflict with the RTKL.

---

[5] Our scope of review for a question of law under the RTKL is plenary. *Office of the Governor v. Raffle*, 65 A.3d 1105, 1109 n.4 (Pa. Cmwlth. 2013) (quoting *Stein v. Plymouth Township*, 994 A.2d 1179, 1181 n.4 (Pa. Cmwlth. 2010)). "A reviewing court, in its appellate jurisdiction, independently reviews the OOR's orders and may substitute its own findings of fact for that of the agency." *Bowling v. Office of Open Records*, 990 A.2d 813, 818 (Pa. Cmwlth. 2010), *affirmed*, 75 A.3d 453 (Pa. 2013).

Requestor argues that the P3 Law does not conflict at all with the RTKL. It contends that while the P3 Law only specifically states that the successful proposal must be released, it is silent as to whether the unsuccessful proposals must be released. It argues that we have to look to the RTKL to determine whether unsuccessful proposals are public records. Because Section 708(b)(26) of the RTKL, 65 P.S. § 67.708(b)(26), makes no distinction between successful and unsuccessful proposals and only allows the withholding of any proposal from the public only until the contract has been awarded, that means that under the P3 Law, unsuccessful proposals are also public records. We disagree.

The problem with Requestor's position is that it would have us incorporate into Section 9111 of the P3 Law, which was enacted after the RTKL, Section 708(b)(26) of the RTKL, 65 P.S. § 67.708(b)(26), notwithstanding the very different language in the two provisions as to what is to be released. More fundamentally, though, the P3 Law is a standalone law that takes the Bridge Replacement project out of the normal Procurement Code process for construction of public facilities and substitutes a new method for securing public facilities, including what records are considered public.

Under the Procurement Code, contracts are output-based, where the public sector owner identifies the exact outputs required through detailed specifications. 62 Pa.C.S. § 322. Each phase of the project is procured separately and multiple contracts pertaining to that phase may be awarded. 62 Pa.C.S. § 517. Contracts are awarded in stages: companies bid on the design; once the design is completed, a contract is awarded for construction; once construction is completed,

9

it becomes the public entity's maintenance responsibility. 62 Pa.C.S. §§ 905, 103. Because the Procurement Code process is output-based, most of the risks associated with normal procurement contracts are assumed by the public sector entity. Usually, each project is financed directly by government through capital contributions or debt. The RTKL, in general, applies to Procurement Code records.

The P3 Law presents an alternative method to set forth in the Procurement Code to build or maintain public infrastructure. Under the P3 Law, procurement of two or more of the project delivery phases can be integrated and those methods may involve anything from designing and constructing to operating, maintaining and financing the project. 74 Pa.C.S. § 9108. Moreover, P3 contracts have outcome-based specifications, meaning that the public sector owner specifies its requirements and the private sector partner determines the best way to meet them. *See* 74 Pa.C.S. § 9110. Typically, in a P3 contract, the public sector partner would be responsible for securing its own financing, with the private sector partner financing the upfront capital costs and then recovering its investment over the term of the P3 agreement. *See* 74 Pa.C.S. § 9121. Also, the private sector party assumes substantial financial, technical and operational risk, and a Public-Private Transportation Partnership Board was created to oversee the process and select P3 projects. 74 Pa.C.S. § 9103.

Just as the procurement processes under the P3 Law are separate from those used under the Procurement Code, the public access to records contained in Section 9111 of the P3 Law are separate and distinct from the RTKL. Unlike the

10

RTKL, which is open ended—i.e., unless falling within one of the exemptions the information is presumed to be a public record—Section 9111 of the P3 Law is closed-ended in that it specifies what information must be released, and if the record is not specified as public, it is not a public record. The P3 Law provides that only the identity of the development entity selected, the contents of the response of the development entity to the request for proposals, the final proposal submitted by the development entity, and the form of the Public-Private transportation partnership agreement be made public. The exceptions as to what has to be disclosed under the RTKL and the P3 Law, in some instances, are similar. However, the exceptions under the P3 Law are more expansive in that architectural and engineering plans and information relating to competitive marketing materials and strategies are not to be made public, while under the RTKL, normally, they are. The P3 Law is also more specific in that it denominates what type of materials cannot be released. Moreover, only the private development entity that is the successful proposer can release information that is otherwise exempt from disclosure under Section 9111(2) of the P3 Law, 74 Pa.C.S. § 9111(2), taking away the normal right of a public contracting agency to release information in its possession if it believes it to be in the public interest. 65 P.S. § 67.506.

Simply, if the General Assembly wanted all proposals to be released, it would have said so and not limited the release to only the successful proposal.[6]

---

[6] Under the statutory construction principle *expressio unius est exclusio alterius*, the inclusion of a specific matter in a statute implies the exclusion of other matters. *Atcovitz v. Gulph Mills Tennis Club, Inc.*, 812 A.2d 1218 (Pa. 2002).

11

*See Heltzel*, 90 A.3d at 832 (explaining that "a statute should be clear when it establishes the public nature of records.").[7]

Accordingly, for the above reasons, we reverse the OOR's final determination to the extent it concluded that the proposals of the unsuccessful bidders are subject to public disclosure.[8]

_____
DAN PELLEGRINI, Senior Judge

---

[7] Requestor contends that it is entitled to an award of recoupment of attorneys' fees and costs of litigation under Section 1304(a) of the RTKL, 65 P.S. § 67.1304(a), because "PennDOT unreasonably and willfully ignored the depth of case law that has declared bids to be public record." (Requestor's Brief at 19.). Obviously, because we have decided this matter in PennDOT's favor, the request for counsel fees is denied.

[8] We agree, though, with the OOR that even if the unsolicited proposals were public records, unsuccessful bidders' personal telephone numbers and financial information submitted to demonstrate a bidder's capacity to perform and confidential proprietary information/trade secrets are exempt from disclosure under Section 9111(4) of the P3 Law, 74 Pa.C.S. § 9111(4).

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania, :
Department of Transportation, :
    Petitioner :
      :
   v.  : No. 246 C.D. 2016
      :
Walsh/Granite JV, :
    Respondent :


# **O R D E R**


AND NOW, this 31st day of October, 2016, the Final Determination of the Office of Open Records dated January 19, 2016, at No. AP 2015-2648, is reversed.


_____
DAN PELLEGRINI, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania,     :
Department of Transportation,     :
                Petitioner     :
                         :  No. 246 C.D. 2016
          v.           :
                         :  Argued:  September 15, 2016
Walsh/Granite JV,     :
                Respondent     :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE JOSEPH M. COSGROVE, Judge
              HONORABLE DAN PELLEGRINI, Senior Judge


DISSENTING OPINION
BY JUDGE McCULLOUGH                FILED:  October 31, 2016


I respectfully dissent from the Majority's thoughtful resolution of the narrow issue presented on appeal:  whether section 9111 of the Public-Private Transportation Partnership Law (P3 Law),[1] 74 Pa.C.S. §9111,[2] exempts from

---

[1] 74 Pa.C.S. §§9101—9124.

[2] In its entirety, this section states:

> (1)  Upon the selection of a development entity to be a party to a public-private transportation partnership agreement, the identity of the development entity selected, the contents of the response of the development entity to the request for proposals, the final proposal submitted by the development entity and the form of the public-private transportation partnership agreement **shall be made public**. Any financial information of a development entity that was requested in the request for proposals or during discussions and negotiations to demonstrate the economic capability of a development entity to fully perform the requirements of the public-

**(Footnote continued on next page…)**

private transportation partnership agreement **shall not be subject to public inspection**.

(2) A proprietary public and a private development entity may agree, in their discretion, to make public any information described under paragraph (1) that would not otherwise be subject to public inspection.

(3) If a proprietary public entity terminates a public-private transportation partnership agreement for default, rejects a private entity on the grounds that the private entity is not responsible or suspends or debars a development entity, the private entity or development entity, as appropriate, shall, upon written request, be provided with a copy of the information contained in the file of the private entity or development entity maintained by the proprietary public entity under a contractor responsibility program.

(4) The following information **shall not be public**:

(i) Information relating to proprietary information, trade secrets, patents or exclusive licenses, architectural and engineering plans and information relating to competitive marketing materials and strategies.

(ii) Security information, including risk prevention plans, detection and countermeasures, emergency management plans, security and surveillance plans, equipment and usage protocols and countermeasures.

(iii) Records considered nonpublic matters or information by the Securities and Exchange Commission under 17 CFR 200.80 (relating to commission records and information).

(iv) Any financial information deemed confidential by the proprietary public entity upon a showing of good cause by the offeror or development entity.

(v) Records prepared or utilized to evaluate a proposal.

**(Footnote continued on next page…)**

PAM - 2

disclosure the proposals of *unsuccessful* bidders made in connection with a bridge project after the Department of Transportation (Department) awarded the contract. The Majority concludes that section 9111 shields this information from public inspection.

The objective of the Right-to-Know Law (RTKL)[3] "is to empower citizens by affording them access to information concerning the activities of their government . . . . [T]he enactment of the RTKL in 2008 was a dramatic expansion of the publics' access to government documents." *Levy v. Senate of Pennsylvania*, 65 A.3d 361, 381 (Pa. 2013) (citation and internal quotation marks omitted). "Whereas before a requester had the burden to prove that documents should be disclosed, the RTKL presumes documents in the possession of an agency are public records subject to disclosure, unless protected by a specific exception." *Levy*, 65 A.3d at 381 (citation omitted).

Pursuant to section 305(a)(3) of the RTKL, a record in the possession of a Commonwealth agency "shall be presumed to be a public record" unless "the record is exempt from disclosure under any other Federal or State law or regulation

---

**(continued…)**

74 Pa.C.S. §9111 (emphasis added). A "[d]evelopment entity" is defined, in relevant part, as "[a]n entity which is a party to a public-private transportation partnership agreement," and a "[p]ublic-private transportation partnership agreement" is "[a] contract for a transportation project which transfers . . . a transportation facility by a public entity to a development entity for a definite term during which the development entity will provide the transportation project to the public entity in return for the right to receive all or a portion of the revenue generated from the use of the transportation facility, or other payment . . . ."

[3] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101—67.3104.

or judicial order or decree." 65 P.S. §67.305(a)(3).[4] "In order to constitute an exemption under Section 305(a)(3) of the RTKL, **the . . . statute must expressly provide that the record sought is confidential, private, and/or not subject to public disclosure**." *Ali v. Philadelphia City Planning Commission*, 125 A.3d 92, 100 (Pa. Cmwlth. 2015) (en banc) (emphasis added).

Section 9111(1) of the P3 Law states that "the final proposal" of the *successful* bidder (or "development entity selected") "shall be made public," but also states that certain financial information submitted by the *successful* bidder "shall not be subject to public inspection." 74 Pa.C.S. §9111(1).[5] As the Majority concedes, this provision of the P3 Law pertains to the proposal and financial information of the *successful* bidder – and that bidder only – after a contract has been awarded. Maj. slip op. at 2-3, 11.

Importantly, section 9111 of the P3 Law is silent as to whether the proposals of *unsuccessful* bidders are public or non-public records after a contract has been awarded: the statute voices no view, makes no suggestion either way, and can only be considered as omitting the topic entirely. As a natural result of this void, section 9111 of the P3 Law does not in any linguistic manner exempt from disclosure the proposals of the *unsuccessful* bidders. The Majority's determination that the P3 Law renders the proposals of the *unsuccessful* bidders untouchable requires adding language into section 9111 of the P3, which is "contrary to the established precept that it is improper for this Court to supply

---

[4] *See also* section 306 of the RTKL, 65 P.S. §67.306 (stating that "[n]othing in the [RTKL] shall supersede or modify the public or nonpublic nature of a record or document established in Federal or State law, regulation or judicial order or decree.").

[5] The P3 Law also contains a list of other information that "shall not be public," including trade secrets and the like, but this section is neither applicable nor informative in resolving the issue at hand. *See* 74 Pa.C.S. §9111(4).

PAM - 4

legislative omissions." *Karoly v. Mancuso*, 65 A.3d 301, 309 n.7 (Pa. 2013). Tellingly, "it is not for the courts to add, by interpretation to a statute, a requirement which the legislature did not see fit to include." *Martin v. Department of Transportation, Bureau of Driver Licensing*, 905 A.2d 438, 443 (Pa. 2006). Given the absence of language in section 9111(1) of the P3 Law prohibiting disclosure of the *unsuccessful* bidders' proposals, I cannot agree with the Majority.

As the Majority posits:  "the issue in this case is whether Section 9111 of the [P3 Law] exempts *unsuccessful* proposals from disclosure because it only specifically provides for the disclosure of the *successful* proposal[.]"  Maj. slip op. at 2-3 (emphasis added).  A statute which explicitly says that one record **is** subject to public disclosure (i.e., the proposal of the *successful* bidder), but is silent regarding another record (i.e., the proposals of the *unsuccessful* bidders) should not be interpreted to say that the second and unmentioned record is **not** subject to disclosure.  Stated differently, the Majority relies solely upon statutory silence, i.e., the proposal of the *successful* bidder is explicitly disclosable; ergo, by implication, the proposals of the *unsuccessful* bidders are not disclosable.

Section 9111(1) of the P3 Law says nothing about the public nature of the proposals of the *unsuccessful* bidders.  When a statute does not speak of a particular record or document, then it does not "expressly provide that the record sought is confidential, private, and/or not subject to public disclosure." *Ali*, 125 A.3d at 100.  If the General Assembly wanted to shield from disclosure the proposals of the *unsuccessful* bidders, it "could have done so, and it may even have intended to do so, but it did not do so." *Commonwealth v. Shafer*, 202 A.2d 308, 312 (Pa. 1964).  It is an established precept that "[a] court has no power to insert words into statutory provisions where the legislature has failed to supply them." *Amendola v. Civil Service Commission of Crafton Borough*, 589 A.2d 775, 777

PAM - 5

(Pa. Cmwlth. 1991). Because there is no language in the P3 Law exempting from disclosure the proposals of the *unsuccessful* bidders after a contract has been awarded, I would conclude that the presumption of public access conferred by section 305(a)(3) of the RTKL stands intact and these records are disclosable.

The Majority states that disclosure would require the Court to "incorporate into Section 9111 of the P3 Law, which was enacted after the RTKL, Section 708(b)(26) of the RTKL," and that "the public access to records contained in Section 9111 of the P3 Law are separate and distinct from the RTKL," dubbing the RTKL as "open ended" and denoting the P3 Law as "closed-ended." Maj. slip op. at 9-10.

The RTKL is the preeminent statute regarding the public's requests to access public records. *See Levy*, 65 A.3d at 381. First and foremost, the RTKL mandates that "[a] record in the possession of a Commonwealth agency . . . shall be presumed to be a public record." Section 305(a) of the RTKL, 65 P.S. §67.305(a). By its very terms, section 305(a)(3) of the RTKL acknowledges that there are other statutes that dictate the confidential or non-public nature of a document and incorporates, through reference, those statutes into its scheme, providing a basis for an exemption from disclosure and nullifying the presumption that a record is a public record. *See* 65 P.S. §67.305(a)(3). However, as explained above, section 9111(1) of the P3 Law provides for no such exemption in this case.

Moreover, section 708(b)(26) of the RTKL, 65 P.S. §67.708(b)(26), and section 9111 of the P3 Law are entirely consonant. The former says that, in general and subject to other exemptions, proposals are exempt from disclosure until the contract is awarded, while the latter provides for disclosure only after a contract has been awarded and expounds upon some additional exemptions. *See* 65 P.S. §67.708(b)(26) (exempting "[a] proposal pertaining to agency procurement

PAM - 6

or disposal of supplies, services or construction *prior to the award of the contract or prior to the opening and rejection of all bids*") (emphasis added); 74 Pa.C.S. §9111(1) (stating that the "final proposal" of the "development entity selected … shall be made public."); 74 Pa.C.S. §9111(4) (providing that certain information, such as trade secrets and the like, "shall not be public."). To the limited extent that section 9111(4) of the P3 Law contains exemptions that are not duplicitous of those in the RTKL, these exemptions, in turn, are incorporated into the RTKL via section 305(a)(3) of the RTKL and can serve as a basis for non-disclosure.

There is no conflict between the RTKL and the P3 Law, and the two can be construed and applied in unison. *See* Section 1932(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. §1932(b) ("Statutes in pari materia shall be construed together, if possible, as one statute."). The Majority essentially allows section 9111 of the P3 Law to abrogate or supersede the RTKL and act as its own statutory scheme when it comes to the disclosure of public records. Absent an overt expression of unmistakable language and intent, I do not believe that the General Assembly, in enacting the P3 Law, intended to displace the RTKL. In addition, the bidding processes of the Procurement Code[6] and the P3 Law as well as the RTKL are clear.

For these reasons, I respectfully dissent. Unlike the Majority, I would affirm the final determination of the Office of Open Records specifically upholding its conclusion that the proposals of the *unsuccessful* bidders are disclosable.

_____
PATRICIA A. McCULLOUGH, Judge

_____

[6] 62 Pa.C.S. §§101-2311.